UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

  -vs-

                                                                      Case No. 11-CR-127

AARON MOESER,
JOSEPH BOWLES,
and MICHAEL WOYAN,

    Defendants.

## DECISION AND ORDER

Aaron Moeser was a commercial loan officer at State Financial Bank ("SFB") from 2000 through 2007. In 2011, Moeser was charged, along with four other individuals, with participating in a bank fraud scheme in relation to a $790,000 construction loan. Moeser, like all of his co-defendants, eventually pled guilty to one count of conspiracy to commit bank fraud. On March 27, 2013, the Court sentenced Moeser to two years of probation, but held open the issue of restitution pending further written briefing. The government is pursuing $625,544.01 in restitution – $480,000 for the bank, with the remaining losses claimed by various subcontractors who have not been paid for their work. Moeser's co-defendants have already been sentenced and either are, or will be, subject to joint and several restitution orders. For the reasons that follow, Moeser's argument that his restitution order should be limited to $23,048.43 is without merit.

In September of 2004, Moeser prepared and submitted a credit approval presentation for Michael Woyan, d/b/a People's Action Redevelopment Coalition ("PARC") to construct a new five-unit community redevelopment project at 5th and Arthur in Milwaukee, Wisconsin. Senior bank officials approved the loan, which was the type that financial institutions were encouraged to fund as part of the Community Reinvestment Act. After approval but prior to closing, Moeser learned that Woyan did not have ownership of the real property which was to be used for the project and did not have the financial ability to purchase it. Moeser offered to lend the purchase price of $30,500 to Woyan. Both men understood that the funds would be repaid by Woyan with monies taken from the first draw of the SFB construction loan. Bank officials later stated that the loan would not have been approved if they knew about Moeser's personal loan to Woyan.

After closing, the project commenced, and Woyan used the initial disbursements to re-pay Moeser, plus $15,000 in interest ($45,500.00 total). Between November 4, 2004 and September 14, 2005, there were fifteen draw requests, all subject to Moeser's approval. Moeser approved the final draw, falsely representing that the project was nearly 100% complete. At this point, Moeser knew that Woyan had used some of the funds for other purposes, including salaries for PARC employees who were developing a different project, a 24-unit project known as Lighting the Way on Milwaukee's North Side. Nonetheless, Moeser approved the draw, instructing Woyan to continue funding the Lighting the Way project instead of the 5th and Arthur

project.

Associated Bank, SFB's successor-in-interest, eventually foreclosed on the 5th and Arthur property. A physical inspection revealed that the project was 40-45% complete and would require an additional $375,000 to $400,000 to finish. The bank sold the unfinished property for $300,000.

The government seeks restitution pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. The MVRA provides that, for certain crimes, courts "shall order . . . that the defendant make restitution to the victim of the offense." § 3663A(a)(1). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." § 3663A(a)(2).

Strangely, Moeser concedes that the bank is a "victim" under the MVRA, but argues that he should not be held liable for the full extent of the bank's loss because various intervening factors caused the loss after the initial fraudulent loan and before the final draw. The MVRA does not impose a "proximate cause" limitation on the amount of restitution that can be ordered once a person or other entity is found to be a "victim" for purposes of the Act. Rather, a victim is *defined* as a person who was directly and proximately harmed by the defendant's offense.

To the extent that Moeser may actually be arguing that the bank is not a victim under the MVRA, his argument boils down to the contention that the actions of his co-conspirators pursuant to the scheme to defraud were unforeseeable intervening factors that harmed the bank. To be sure, intervening causes are relevant to the proximate harm analysis. *See, e.g., United States v. Speakman*, 594 F.3d 1165, 1172 (10th Cir. 2010) ("for the purposes of determining if an individual is a 'victim' under the MVRA, an individual will be 'proximately harmed as a result of' the defendant's crime if either there are no intervening causes, or, if there are any such causes, if those causes are directly related to the defendant's offense"). However, it is a step too far to suggest that the actions of a defendant's co-conspirators pursuant to a scheme to defraud can be considered intervening factors to show that a person was not directly and proximately harmed by that defendant. The MVRA "authorizes restitution for all harm caused by 'the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern,' provided the defendant is convicted of an offense that has at least one of those features." *United States v. Martin*, 195 F.3d 961, 969 (7th Cir. 1999). This language "imposes joint liability on all participants in the scheme, conspiracy, or pattern." *Id.*; *see also United States v. Dokich*, 614 F.3d 314, 318 (7th Cir. 2010) ("the MVRA imposes joint liability on all defendants for loss caused by others participating in the scheme"); *United States v. Dickerson*, 370 F.3d 1330, 1339 (11th Cir. 2004) (collecting cases).

Accordingly, while Moeser argues that he cannot be held liable for the actions

of his co-defendants, in reality, the exact opposite is true with respect to persons who are "directly harmed" by Moeser's "criminal conduct in the course of the scheme, conspiracy, or pattern." § 3663A(a)(2). In this context, the term "direct" or "directly" requires that "the harm to the victim be closely related to the scheme, rather than tangentially linked." *United States v. Kones*, 77 F.3d 66, 70 (3d Cir. 1996); *see also United States v. Karam*, 201 F.3d 320, 325-26 (4th Cir. 2000) ("Federal courts may order restitution encompassing losses resulting from a criminal scheme regardless of whether the defendant is convicted for each criminal act within the scheme, so long as the loss is a direct result of the defendant's criminal conduct or is closely related to the scheme") (internal citations omitted).[1] Here, the harm suffered by the bank and the unpaid subcontractors was directly and closely related to the underlying scheme to defraud. Further, the phrase "defendant's criminal conduct in the course of the scheme, conspiracy or pattern" means "conduct that is both engaged in the furtherance of the scheme, conspiracy or pattern, and proscribed by the criminal statute the defendant was convicted of violating." *Kones*, 77 F.3d at 70. Quite clearly, Moeser's conduct was in furtherance of the bank fraud scheme and in violation of 18 U.S.C. § 1344.

Finally, Moeser asks the Court to apportion liability to reflect a lower level of culpability. 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has

---

[1] These cases interpreted the MVRA's predecessor statute, the Victim Witness and Protection Act, but relevant statutory language is identical. *United States v. Coats*, 487 B.R. 648, 653 n.4 (E.D.N.C. 2013).

- 5 -

contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant"). The Court rejects Moeser's attempt to distance himself from the actions of his co-conspirators. Moeser knew that Woyan had limited financial resources and was willing to misrepresent his equity position to obtain a loan. Moeser knew or should have known that Woyan would be willing to use loan funds for purposes unrelated to the construction project, especially since Woyan used the initial loan proceeds to re-pay Moeser's personal loan, plus interest. Moeser also approved the final draw on the loan knowing that the funds would be used on a separate project. Moeser fully contributed to the loss of the bank and to the losses of the unpaid subcontractors.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Moeser must pay restitution in the total amount of $625,544.01, joint and several with Roderick Taylor, Joseph Bowles, and Michael Woyan, at a rate of not less than $200.00 per month. The amount due to Associated Bank is joint and several with Leopaldo Balderas, Jr.;

2. Bowles must pay restitution in the total amount of $625,544.01, at a rate of not less than $200.00 per month, joint and several as noted above;

3. The judgment against Woyan will be amended to reflect the corrected

total amount of $625,544.01, joint and several as noted above; and

       4.      The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2013.

                                          **BY THE COURT:**

                                          */s/ Rudolph T. Randa*
                                          **HON. RUDOLPH T. RANDA**
                                          **U.S. District Judge**